IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-01877-RPM

DIANA ANDERSON,

          Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

ORDER AFFIRMING DENIAL DECISION
_____

  Diana Anderson has never been gainfully employed. She received Supplemental Security Income payments for disability from age 20 until age 43. While it is not entirely clear from the record, her disability determination appears to have been based on a grand mal seizure disorder. The Agency found medical improvement in the control of her seizure disorder and terminated payment as of September 30, 2002.

  On December 2, 2004, Ms. Anderson filed a new Application for Supplemental Security Income payments, alleging the onset date as January 19, 1978, (R. 75), the onset date for her earlier disability. At a hearing before the Administrative Law Judge ("ALJ") on July 10, 2006, her counsel asked for a continuance and noted that the onset date of January 19, 1978, was for the previous period of disability which had been terminated by an ALJ decision which

was not appealed. (R. 343). The continuance was granted and at the hearing held on September 12, 2006, counsel amended the onset date to December 2, 2004. Upon repeated inquiries from the ALJ her attorney was unable to explain why December 2, 2004, was the onset date except that it was the date of her new application. (R. 348-354).

In her application, Ms. Anderson reported that her disability was due to arthritis, scoliosis, seizure disorder, severe depression, and borderline personality disorder. (R. 69). At the hearing, the claimant's counsel did not focus attention on any particular impairments but said that her psychological problems were themselves disabling (R. 349). Because of her physical problems, her treating physician, Dr. Higgins, completed a residual functional capacity questionnaire on July 18, 2006, identifying such restrictions as would essentially prohibit any gainful employment. (R. 283-286). Dr. Higgins also wrote a letter on May 3, 2006, summarizing his patient's past medical history, current medications and opined that the medical history confirms a permanent and complete disability, making her unable to obtain any gainful employment of any type. (R. 287). The recited medical history includes conditions observed during the earlier period of disability, including removal of a brain tumor in 1980, foot surgery, fibromyalgia and other conditions not specifically identified as to time.

The medical records relevant to the period beginning December 2, 2004, are not extensive. The most significant report is that of Dr. R. Terry Jones, M.D., who conducted a medical evaluation on June 20, 2005. Dr. Jones recited the interview and after identifying a dysthymic disorder and chronic pain disorder with both

2

medical and psychological factors present, together with osteoarthritis, scoliosis and seizure disorder (need further evaluation) wrote the following conclusions:

> The claimant is a 46-year-old, white divorced female who has a history of a seizure disorder, grand mal type, which at this time there is some question about how well controlled it is on medications. She stated that she does not have any seizures during the day, but there is a question of her possibly having seizures at night. The claimant definitely needs to have a complete neurological evaluation regarding her seizure disorder. The claimant also has a history of major depression in the past; however, at this time, her symptoms appeared to fall in the category of a dysthymic disorder and are chronic and moderate in degree that if she does continue to have some crying spells, some feelings of helplessness, hopelessness, and worthlessness with her present circumstances but no significant suicidal ideation now. No history of any recent suicide attempts. No psychomotor retardation. No difficulty with concentration or memory. No anhedonia, etc. The claimant is receiving an antidepressant medication Prozac and she is able to have frequent visits with Dr. Higgins who helps talk her through a lot of her daily problems and feelings of depression. The claimant also does have a history of scoliosis and osteoarthritis, and does have a chronic pain disorder related to those symptoms. She is receiving physical therapy at this time in the form of hydrotherapy three times a week, has been going for the past six months and finds the hydrotherapy very helpful. Her Mental Status Examination at this time is relatively within normal limits, that is she does not show any significant evidence of a depressive symptoms or affective norm. Concentration and memory were excellent. No psychomotor retardation, etc. The claimant is able to manage her own funds and pay her own bills.

(R. 248).

Dr. Jones also reported a GAF of 65 at the time of his interview.

The ALJ denied disability at Step 5 of the Sequential Evaluation Process, finding that Diana Anderson had the residual functional capacity to perform the occupations of document preparer, pari-mutuel [sic] ticket checker and call-out operator as described in the Dictionary of Occupational Titles. That conclusion was reached based on the testimony of a vocational expert in response to the

ALJ's hypothetical question as follows:

> Assuming no past relevant then, I'm going to ask you a series of hypothetical questions and I would ask you to assume as to each we are talking about a person who has education factor score to those of the Claimant this morning but no past relevant work. If such a person is able to perform work at the light level of exertion which does not require standing and walking more than two hours out of an eight-hour day and does not require exposure to unprotected heights or hazardous machinery, could such – would such – would there be any jobs that exist in significant number in the national or regional economies such a person could perform?

(R. 373).

In this review under 42 U.S.C. § 405(g) the attorney now representing the plaintiff faults this hypothetical question for the ALJ's failure to include the many limitations complained of by Ms. Anderson at the hearing and in her previous contacts with the health care providers and evaluators. The ALJ did not include those limitations because of her findings that Ms. Anderson was not entirely credible because of inconsistencies in the medical records and with respect to her daily activities. Evidently, Ms. Anderson lives alone in a third-floor apartment and is caring for herself in all respects, except driving. She has consistently reported pain making it difficult to sleep and there is no doubt that she suffers from osteoarthritis. The ALJ noted that the claimant does not take pain medication other than Tylenol and Advil and that there are no significant showings of the effects of her arthritis on X-ray and MRI examinations. It does appear that there is a brain lesion shown in an MRI taken on September 8, 2006, but there is nothing to indicate that it is having any symptomatic effects.

What is most significant in this case is that the lawyer who previously

represented Diana Anderson through the administrative process failed to identify with any reasonable clarity the issues being presented to the ALJ.  In *Maes v. Astrue,* 522 F.3d 1093 (10th Cir. 2008) the court recognized that while the proceedings are not adversarial, the ALJ should be entitled to rely on the claimant's counsel to structure and present the claimant's case in a way that the claimant's claims are adequately explored and to require counsel to identify the issue or issues requiring further development.  *Id.* at 1096, citing *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997).  That was not done in this case.

The most problematic aspect of the decision is the failure to incorporate limitations from pain in the evaluation.  That, however, depends on the credibility determination and the ALJ sufficiently explained her evaluation of the plaintiff's credibility.  Obesity is emphasized by counsel in the briefing of this matter but he has only given height and weight indicators.  There is nothing in the medical records that indicates any efforts to control the claimant's weight other than recommendations for exercise and physical therapy.

Upon consideration of the full record, the necessary conclusion is that the ALJ's decision was based on substantial evidence and without legal error.  Accordingly, it is

ORDERED that the decision is affirmed.

Dated:   February 17th, 2009

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge